FILED

2006 Mar-03  PM 12:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

NORTH JACKSON PHARMACY, Inc.,
C & C, Inc., d/b/a BIG C DISCOUNT DRUGS,
Inc., individually and on behalf of all others
similarly situated,
    Plaintiffs,     CV-03-2696-VEH
             consolidated with: CV-03-2697-VEH


  v.


EXPRESS SCRIPTS, Inc.,
    Defendant.
_____/


NORTH JACKSON PHARMACY, Inc.,
C & C, Inc., d/b/a BIG C DISCOUNT DRUGS,
Inc., individually and on behalf of all others
similarly situated,
    Plaintiffs,     CV-03-2697-VEH
             consolidated with: CV-03-2696-VEH


  v.


MEDCO HEALTH SOLUTIONS, INC.;
MERCK & CO., Inc.; and PAID
PRESCRIPTIONS, L.L.C.;
    Defendants.
_____/


**MEMORANDUM OPINION AND ORDER
REGARDING MOTION FOR CLASS CERTIFICATION**


This matter is before the court on a motion by the Plaintiffs in these

consolidated actions to certify the action as a class action under Fed. R. Civ. P. 23(b)(2) and (3).  Doc. 51[1].  The Motion has been extensively litigated, as the parties have submitted over hundreds of pages of briefs and exhibits in support of their respective positions.  The parties also presented argument in a class certification hearing held on February 1, 2006.  The Motion is now ripe for disposition.

For the reasons hereinafter stated, the court will grant the Motion as to Claim I and grant the Motion as to Claim II.

## I.   **Background**[2, 3]

### A.   *Factual Overview.*

The Plaintiffs are independent pharmacies who claim that the Defendants are in violation of Section 1 of the Sherman Act (15 U.S.C. § 1) .  One of the four Defendants, Merck & Co., Inc., is a pharmaceuticals manufacturer.  The Plaintiffs allege that during the relevant time period, Merck "controlled and dominated" another Defendant, Medco Health Solutions, Inc., "to the extent that Medco was the mere

---

[1]  Because the relevant pleadings in the cases are identical, the court will refer only to the document numbers of the pleadings as shown on the docket sheet for the lead case, 03-CV-02696-VEH.

[2]  This opinion uses "P" and "D" to identify documents respectively submitted by Plaintiffs and by Defendants.

[3]  The court has borrowed heavily from the decision of the Honorable Milton I. Shadur, Senior United States District Judge, for this factual overview.  See Ds' Supplemental Memorandum, doc. 58, Exhibit A.

'alter ego' and/or agent of Merck." Medco, like the other two Defendants, is a pharmacy benefits manager, or "PBM." The PBMs administer prescription drug benefit plans on behalf of employers, health insurers, and other third-party payors of prescription drug costs ("Plan Sponsors"). Thousands of such Plan Sponsors have hired the Defendants to help control the cost of prescription drugs for their employees or members ("Plan Subscribers"). The Defendants accomplish that goal by performing a number of functions on Plan Sponsors' behalf, including the creation of a network of retail pharmacies where Plan Subscribers can purchase discounted prescription drugs. Defendants also lower Plan Sponsors' costs by processing claims, maintaining patient records, creating and managing "formularies" (lists of drugs preferred by a given plan) and negotiating discounts or rebates with drug manufacturers that wish their drugs to be included on plan formularies.

The Plaintiffs are independent retail pharmacies that have entered into agreements with the Defendants to dispense prescription drugs to Plan Subscribers. In return for being included in Defendants' networks with resultant access to the Defendants' large number of Plan Subscribers, the Plaintiffs must agree to dispense prescription drugs to Plan Subscribers at a discount from the prices charged by Plaintiffs to their cash-paying customers. Such discounted prices, for which Defendants reimburse Plaintiffs, are set by agreement between Plaintiffs and

Defendants, but are usually determined using a formula based on a drug's average wholesale price ("AWP") plus a dispensing fee.

The Plaintiffs object, among other things, to Defendants' creation of retail pharmacy networks and their negotiation of reimbursement rates on Plan Sponsors' behalf.   Plaintiffs say they that, when the Defendants approach independent pharmacies such as the Plaintiffs for inclusion in the Defendants' networks, the Plaintiffs have no acceptable choice.  Either they can agree, and thereby be included in the networks at the cost of accepting unconscionably low reimbursement rates for drugs dispensed to Plan Subscribers, or they can disagree, and thereby be left out of the networks and thereby lose access to the large volume of business of Plan Subscribers who have an incentive to patronize network pharmacies.  Plaintiffs charge that the Defendants' negotiations of those low reimbursement rates is not a "negotiation" at all, but is instead a form of coercion that results from an illegal conspiracy to fix drug prices between and among the Defendants and other PBMs (Claim I), and an illegal conspiracy to fix drug prices between and among the Defendants and the Plan Sponsors they represent (Claim II).

More specifically, the Plaintiffs allege that the Defendants have engaged in a horizontal price fixing conspiracy by fixing and artificially depressing the prices to be paid to pharmacies for prescription drugs and professional services, including

"kick backs" and rebate "schemes" and suppressing, through Defendants' mail service program, the prices paid to independent pharmacies for their products and services.  Additionally, the Plaintiffs allege that the Defendants "orchestrated" the formation of Buying Cooperatives designed to fix prices.

_____**B.**    ***Procedural Posture.***

After the Court denied, on October 13, 2004, the Defendants' Motion to Dismiss, the Defendants filed Answers and the parties conducted extensive discovery as to matters they deemed "essential to class certification."  On June 17, 2005, the Plaintiffs filed their Motion for Class Certification (doc. 51).  On August 3, 2005, the Defendants filed their Joint Opposition (doc. 56), and on August 22, 2005, the Defendants filed their joint Supplemental Memorandum in Opposition to Class Certification (doc. 58). On October 3, 2005, Plaintiffs filed their Reply (doc. 62).  On October 8, 2005, Defendants filed their Joint Sur-Reply (doc. 74).  On January 13, 2006, the parties filed a Joint List of Acronyms (doc. 75). On January 30, 2006, Defendants and Plaintiffs each filed a Supplemental Brief (Expert) (docs. 78 and 77). Defendants corrected their brief (doc. 81) on February 2, 2006 (doc. 82).   On February 7, 2006, the Defendants filed evidence regarding local markets (d0c. 85). On February 8, 2006, Plaintiffs and Defendants each filed another Supplemental Brief (Standing) (docs. 83 and 84).

## II.    Legal Standard for Class Certification[4]

Class actions are governed by Fed.R.Civ.P. 23. With respect to such actions, the Supreme Court has stated generally:

> The class-action device was designed as 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.' *Califano v. Yamasaki,* 442 U.S. 682, 700-701, 99 S.Ct. 2545, 2557- 2558, 61 L.Ed.2d 176 (1979). Class relief is 'peculiarly appropriate' when the 'issues involved are common to the class as a whole' and when they 'turn on questions of law applicable in the same manner to each member of the class.' *Id.,* at 701, 99 S.Ct., at 2557. For in such cases, 'the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23.' *Ibid.*

*General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 155, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

A district court is to make the determination of whether an action should proceed as a class action "[a]s soon as practicable after the commencement of an action brought as a class action...." Fed.R.Civ.P. 23(c)(1). "The decision to certify is within the broad discretion of the court, but that discretion must be exercised within

---

[4] The Supreme Court has stated that "[t]he class action device was designed as 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only . . . '" and is appropriate where the "device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23." *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 155 (1982) (citations omitted). The Court conducts its analysis of Plaintiffs' claims in light of these principles.

the framework of rule 23." *Culpepper v. Inland Mortgage Corp.,* 189 F.R.D. 668, 669 (N.D.Ala.1999) (quoting *Castano v. American Tobacco Co.,* 84 F.3d 734, 740 (5th Cir.1996)).

Plaintiffs' Motion for Class Certification is governed by the standards set forth in Rule 23, Fed.R.Civ.P. *See Valley Drug Co. v. Geneva Pharmaceuticals, Inc.,* 350 F.3d 1181, 1187 (11th Cir.2003) (explaining that Rule 23 furnishes the "legal roadmap" which courts must follow in assessing propriety of class certification). "For a district court to certify a class action, the named plaintiffs must have standing, and the putative class must meet each of the requirements specified in Federal Rule of Civil Procedure 23(a), as well as at least one of the requirements set forth in Rule 23(b)." *Klay v. Humana, Inc.,* 382 F.3d 1241, 1250 (11th Cir.2004); *Valley Drug,* 350 F.3d at 1188 ("Failure to establish any one of [the Rule 23(a)] factors and at least one of the alternative requirements of Rule 23(b) precludes class certification"). It is well established that "[t]he burden of proof to establish the propriety of class certification rests with the advocate of the class." *Valley Drug,* 350 F.3d at 1187; *see also London v. Wal-Mart Stores, Inc.,* 340 F.3d 1246, 1253 (11th Cir.2003). A district court's ruling on a class certification motion will be reviewed on appeal for abuse of discretion. *See Cooper v. Southern Co.,* 390 F.3d 695, 711 (11th Cir.2004) ("Questions concerning class certification are left to the sound discretion of the

district court."); *Murray v. U.S. Bank Trust Nat'l Ass'n,* 365 F.3d 1284, 1288 (11th Cir.2004); *Hines v. Widnall,* 334 F.3d 1253, 1255 (11th Cir.2003) (district court decision on class certification will not be disturbed as long as it remains within Rule 23 parameters, even if appeals court would have resolved issues differently).

In performing the Rule 23 analysis, the Court may not inquire into the merits of Plaintiffs' claims at this preliminary stage. *See, e.g., Cooper,* 390 F.3d at 712 (repeating well-worn admonition that Rule 23 does not confer upon a court authority to conduct preliminary merits inquiry in making class certification determination); *Morrison v. Booth,* 763 F.2d 1366, 1371 (11th Cir.1985) (concurring with district court's assessment that it "could not conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action"). Nonetheless, in conducting the requisite "rigorous analysis," the district court may look beyond the allegations of the Complaint. *See Wright,* 201 F.R.D. at 534 ("In determining whether to certify a class, a court may consider both the allegations of the complaint and the supplemental evidentiary submissions of the parties").

## III.   Standing of Named Plaintiffs to Represent the Putative Class.

"[I]t is well-settled that prior to the certification of a class, and technically speaking before undertaking any formal typicality or commonality review, the district court must determine that at least one named class representative has Article III

8

standing to raise each class subclaim." *Prado-Steiman,* 221 F.3d at 1279. Simply put, a plaintiff cannot represent a class unless he first shows that he has standing to raise the claims of the class he seeks to represent. *See Murray,* 365 F.3d at 1288 n. 7. "[A]ny analysis of class certification must begin with the issue of standing." *Griffin v. Dugger,* 823 F.2d 1476, 1482 (11th Cir.1987); *see also Hines,* 334 F.3d at 1256. In *Prado-Steiman,* 221 F.3d at 1280, for instance, the appellate court vacated class certification and remanded with instructions that the lower court determine whether at least one named representative of each class or subclass had standing for each proffered claim. Two particular elements of standing are of vital importance in the case at bar, to-wit: (i) whether the named plaintiffs have sustained an injury in fact; and (ii) whether their claims are timely.  However, because the parties agreed at oral argument that the applicable period is four years, and the court agrees, and because the Plaintiffs agreed to modify their class definition accordingly, the timeliness issue has been made moot.

### A.    *Injury-in-Fact Requirement.*

#### *1. Legal Standard.*

In order to have standing, a plaintiff "must have suffered in injury in fact--an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *London v. Wal-Mart Stores,*

*Inc.,* 340 F.3d 1246, 1251 (11th Cir.2003) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)); *see also Lewis v. Casey,* 518 U.S. 343, 349, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (applying principles of standing to explain that "[i]t is the role of courts to provide relief to claimants, in individual or class actions, who have suffered, or will imminently suffer, actual harm"); *Church v. City of Huntsville,* 30 F.3d 1332, 1340 (11th Cir.1994) (class lacks standing unless at least one named plaintiff is in real and immediate danger of being personally injured by challenged practice); *Lynch v. Baxley,* 744 F.2d 1452, 1456 (11th Cir.1984) (observing that if a named plaintiff does not show that he has sustained or is immediately in danger of sustaining a real, direct injury that is not conjectural or hypothetical, then he may not seek relief on behalf of the class); *Drayton,* 2002 WL 32508918, at *2 (indicating that standing requires plaintiffs to establish that they were injured, and that at least one named plaintiff must have personally suffered injuries giving rise to each claim); *see generally Parker v. Scrap Metal Processors, Inc.,* 386 F.3d 993, 1003 (11th Cir.2004) (defining injury in fact as "a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical").  Additionally, because this case is an antitrust action, in order to have standing the Plaintiffs must show that they have suffered "antitrust injury," that is, injury that flows from Defendants' *anticompetitive* acts.

10

> [E]ven in cases involving *per se* violations, the right of action under §
> 4 of the Clayton Act is available only to those private plaintiffs who
> have suffered antitrust injury. For example, in a case involving
> horizontal price fixing, "perhaps the paradigm of an unreasonable
> restraint of trade," *National Collegiate Athletic Assn. v. Board of
> Regents of University of Oklahoma,* 468 U.S. 85, 100, 104 S.Ct. 2948,
> 2959, 82 L.Ed.2d 70 (1984), we observed that the plaintiffs were still
> required to "show that the conspiracy caused *them* an injury for which
> the antitrust laws provide relief." *Matsushita,* 475 U.S., at 584, n. 7, 106
> S.Ct., at 1354, n. 7 (citing *Brunswick* ) (emphasis added). Similarly, in
> *Associated General Contractors of California, Inc. v. Carpenters,* 459
> U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983), we noted that a
> restraint of trade was illegal *per se* in the sense that it could "be
> condemned even without proof of its actual market effect," but we
> maintained that even if it "may have been unlawful, it does not, of
> course, necessarily follow that still another party ... is a person injured
> by reason of a violation of the antitrust laws within the meaning of § 4
> of the Clayton Act." *Id.,* at 528-529, 103 S.Ct., at 903.

*Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344-345, 110 S.Ct. 1884,

1894 - 1895 (1990).

### 2.    *Plaintiffs' Statement of Their Injuries.*

In Claim I, Plaintiffs assert a conspiracy among Plan Sponsors, using the

Defendants as their "common agent," to fix the prices paid independent pharmacies

for dispensing prescription drugs to Plan Subscribers.  Claim II charges a conspiracy

between and among the Defendants and other PBMs with which Defendants compete

to fix those same prices.  To establish that it is entitled to relief on either claim,

Plaintiffs must establish that the Defendants took part in a "contract, combination ...

11

or conspiracy" that unreasonably restrains trade. (*Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 768 (1984)).

Plaintiffs have offered substantial, although disputed, evidence that they have suffered injury as a result of the alleged conspiracies (see doc. 63 at 17, 18, Plaintiffs' Post-Hearing Brief at 3), and that, as a result of the conspiracies, the reimbursement amounts paid by the Defendants to the Plaintiffs are below competitive rates (see doc. 63 at 5, doc. 52 at 15-16, Plaintiffs' Post-Hearing Brief at 2). Thus, the Plaintiffs have standing.

## IV.    Rules 23(a), (b)(2), and (b)(3).

In the instant case, Plaintiffs ask the Court to certify a class under Rule 23(a) and either Rule 23(b)(2) or (b)(3). Those provisions state as follows:

> **(a) Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
>
> **(b) Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
>
> ***
>
> **(2)** the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory

relief with respect to the class as a whole; or

> **(3)** the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. of Civ. Proc. Rule 23.

## V.   Class Definition.

Although not an express Rule 23 requirement, it is imperative that the class be definable in a reasonable manner. "In order for a party to represent a class, 'the class sought to be represented must be adequately defined and clearly ascertainable.' " *Adair v. Johnston,* 221 F.R.D. 573, 577 (M.D.Ala.2004) (quoting *DeBremaecker v. Short,* 433 F.2d 733, 734 (5th Cir.1970)).  The Defendants have not challenged the Plaintiffs' proposed class definition.  The Plaintiffs propose the following class:

> All independent pharmacies within the boundaries of the United States who contracted with any of the named Defendants, at any time during the period commencing four[5] years before the filing of this Complaint

---

[5]  The plaintiffs originally used ten years but, during oral argument, they agreed that, due to the statute of limitations, the proper period is four years.

through the present (the "Class Period"), to dispense and sell prescription drugs to members of a defendant network. Excluded from the Class are any pharmacies owned or operated by any of the Defendants, their subsidiaries, agents, or principals, etc.

The Court has independently considered whether the proposed class is precisely defined and whether the named Plaintiffs are members of the proposed class. *See Bentley v. Honeywell Intern., Inc.,* 223 F.R.D. 471, 477 (S.D.Ohio 2004) ("Before delving into the 'rigorous analysis' required by Rule 23, a court first should consider whether a precisely defined class exists and whether the named plaintiffs are members of the proposed class."). The Court finds that the proposed class definition meets the applicable legal standard[6].

## VI.    Rule 23(a) Considerations

### A.    *Numerosity*

The Eleventh Circuit has recognized that "while there is no fixed numerosity rule, 'generally less than twenty-one is inadequate, [and] more than forty adequate . . .'" *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (citations omitted). The evidence is undisputed that the number of independent pharmacies who allegedly received lower reimbursements for products and services is in the tens of thousands.

---

[6] In determining whether a class is adequately defined, courts consider whether the proposed definition "specif[ies] a particular group that was harmed during a particular time frame, in a particular location, in a particular way" and "facilitat[es] a court's ability to ascertain its membership in some objective manner." *Bentley v. Honeywell Intern., Inc.,* 223 F.R.D. 471, 477 (S.D.Ohio 2004).

Thus,  Plaintiffs have demonstrated that the proposed class is sufficiently numerous to satisfy Rule 23(a)[7].

### B.      *Commonality/Typicality*

The Federal Rules of Civil Procedure authorize class certification only where "there are questions of law or fact common to the class" (the "commonality" requirement) and "the claims or defenses of the representative parties are typical of the claims or defenses of the class" (the "typicality" requirement). Rule 23(a)(2), (3). The Eleventh Circuit has opined that these requirements, while distinct, are interrelated and overlapping, inasmuch as "[b]oth requirements focus on whether a sufficient nexus exists" between the claims of class representatives and those of other class members to warrant class certification. *Cooper v. Southern Co.,* 390 F.3d 695, 713 (11th Cir.2004) (quoting *Prado-Steiman v. Bush,* 221 F.3d 1266, 1278 (11th Cir.2000)); *see also General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) ("The commonality and typicality requirements of Rule 23(a) tend to merge."); *Prado-Steiman,* 221 F.3d at 1278-79 ("the commonality and typicality requirements of Rule 23(a) overlap").[8]  The critical

---

[7]  Defendants apparently concede that Plaintiffs have met the numerosity requirement.

[8]  Typicality and commonality are generally distinguished by positing that the former weighs individual characteristics of a named plaintiff relative to the class, while the latter examines the group characteristics of the class as a whole. *See Cooper,* 390 F.3d at 714; *see also Piazza v. Ebsco Industries, Inc.,* 273 F.3d 1341, 1346 (11th Cir.2001) ("Traditionally,

function of the typicality/commonality inquiry is to verify that named plaintiffs' incentives are aligned with those of absent class members to ensure that the latter's interests are properly served. *See Prado-Steiman,* 221 F.3d at 1279. The Court will consider the commonality and typicality requirements separately, but recognizes that the distinctions between them may be blurry.

### 1. Commonality Requirement.

Rule 23(a)(2) provides that there must be "questions of law or fact common to the class." *See e.g., Dujanovic v. Mortgage Am., Inc.*, 185 F.R.D. 660, 667 (N.D. Ala. 1999). The threshold question of commonality is not high, and "is generally met when there is a common question of fact, *or* of law." *Id.* (emphasis added). Moreover, "[c]ommonality may exist where the party opposing the class has engaged in a course of conduct that affects all class members and gives rise to a plaintiff's claim." *Id.*; *see also Braxton v. Farmer's Ins. Group*, 209 F.R.D. 654, 658 (N.D. Ala. 2002).

In *Coleman v. Cannon Oil*, 141 F.R.D. 516 (M.D. Ala. 1992), the district court discussed the satisfaction of Rule 23(a)(2)'s commonality requirement in the context of an antitrust suit. The court noted that, with respect to antitrust conspiracy claims

---

commonality refers to the group characteristics of the class as a whole, while typicality refers to the individual characteristics of the named plaintiff in relation to the class.").

16

(such as those present in the instant case), several courts have held that, since such a claim requires proof of conspiracy, which is the linchpin of liability, this in itself is enough to satisfy the commonality requirement. *Id*. at 522.  In a RICO action, the Eleventh Circuit has recognized that, where allegations of wrongdoing arise from a common practice or course of conduct in relation to the class members, the class members' claims will clearly involve common questions of law and fact. *Klay v. Humana*, 382 F.3d 1241 at 1255 (11th Cir. 2004).  The questions of law essential to a determination of Plaintiffs' claims are the same.   Thus, the Court finds that Plaintiffs have met the commonality requirement of Rule 23(a).

　　　　2.　　*Typicality Requirement*

For a plaintiff to meet Rule 23(a)'s requirement of typicality, "[a] class representative must possess the same interest and suffer the same injury as the class members . . ." *Murray v. Auslander*, 244 F.3d 807, 810 (11th Cir. 2001); *see also Hines*, 334 F.3d at 1257 ("Inquires into typicality focus on the similarities between the class representative's claims and the claims of the individuals in the putative class."); *Cox*, 784 F.2d at 1557 ("The claims actually litigated must simply be those fairly represented by the named plaintiffs.").   Stated another way, "typicality measures whether a sufficient nexus exists between the claims of the named representative and those of the class at large." *Hines*, 334 F.3d at 1256.  Moreover,

typicality may be present even when "substantial factual differences" exist, so long as there "is a 'strong similarity of legal theories.'" *Murray*, 244 F.3d at 811; *see also Wright v. Circuit City Stores, Inc.*, 201 F.R.D. 526, 543 (N.D. Ala. 2001) ("particular factual differences, differences in the amount of damages claimed or even the availability of certain defenses against a class representative may not render his or her claims atypical.") (citations omitted).

For largely the same reasons that Plaintiffs' claims meet the commonality requirement, Plaintiffs' claims are also typical of those of all class members. Defendant contends that Plaintiffs' claims are not typical because Plaintiffs are themselves a member of API.[9]  The profits of API go back to the member pharmacies, including both named plaintiffs.  The profits which Defendants have demonstrated were received by the named Plaintiffs were, by any stretch of the imagination, *de minimus*.  As such, I find that the named Plaintiffs membership does not cause them to fail to be typical of the class they seek to represent.

Defendants also challenge Plaintiffs' typicality on the basis that they have garnered business from local pharmacies that have gone out of business in whole or in part due to the challenged conduct of the Defendants.  I reject this challenge.  To

---

[9]  Associated Pharmacies, Inc., ("A Scottsboro, Alabama, based buying cooperative through which approximately 800 independent pharmacies purchase products [including pharmaceutical products] sold at pharmacies...." (Doc. 78, p. 2)

accept it would mean that, in any antitrust case in which some class members have suffered more damage than other class members, only the most damaged class members are "typical." As alleged, all proposed class members, including the named Plaintiffs, have suffered economic loss. The named Plaintiffs are typical of the class they seek to represent.

Finally, Defendants challenge the named Plaintiffs' typicality because the named Plaintiffs are members of a PSAO[10] and PSAOs negotiate better rates for their independent pharmacy members than independent pharmacy members could negotiate for themselves. Indeed, according to the Defendants, PSAOs negotiate as well as chain pharmacies. Again, the fact that some independent pharmacies such as the named Plaintiffs may have taken actions that are competitively advantageous does not, by itself, mean that these Plaintiffs are not typical of the class they seek to represent.

### C.    *Adequacy*

Rule 23(a) requires that both the representative plaintiff and the hired counsel "will fairly and adequately represent the class." *Amchem Prods., Inc. v. Windser*, 521 U.S. 591, 625 (1997); *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1253 (11th

---

[10]  Pharmacy Services Administrative Organization ("Groups that collectively negotiate with PBMs on behalf of their independent pharmacy members for improved reimbursement rates, payment terms, and other contract terms." (Doc. 78, p. 9)

Cir. 2003).  A determination of adequacy entails a two part inquiry of "(1) whether any substantial conflicts of interest exist between the named plaintiff and the class; and (2) whether the representatives will adequately prosecute the action." *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003); *see also Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726-728 (11th Cir. 1987) ("[t]he adequacy inquiry . . . serves to uncover conflicts of interest between named parties and the class they seek to represent.").  While there is no generally applicable test for adequacy of representation within the Eleventh Circuit, the representative plaintiff should "possess the personal characteristics and integrity necessary to fulfill the fiduciary role of class representative." *Kirkpatrick*, 827 F.2d at 726-728. Furthermore, the class representative's interests must be such that he will "assert and defend the interests of [all] of the [class] members," with "forthrightness and vigor." *Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (citations omitted).

Defendants do not attack Plaintiffs' chosen counsel as inadequate nor do they allege that there is an improper relationship between Plaintiffs and their counsel which would defeat adequacy of representation.  The Court accepts that the chosen counsel is adequate.  As discussed above under the challenge to typicality, Defendants do contend that Plaintiffs' interests may lead to conflicts with other

members of the proposed class.  For the same reasons stated in my prior analysis, I reject, at this stage, the Defendants' attacks on the adequacy of these named Plaintiffs.

The Eleventh Circuit has recognized that minor conflicts will not defeat certification, rather "the conflict must be a 'fundamental' one going to specific issues in the controversy." *Valley Drug*, 350 F.3d at 1189.  A conflict is fundamental where the actions of a defendant have benefitted some class members and harmed other members.  *Id*. Defendants have alleged inconsistent harm and benefits in this case. There being no evidence that Plaintiffs' interests have or will *significantly* conflict with those of the unnamed class members, the Court finds that adequacy of representation exists.

## VII.   Rule 23(b) Requirements

### *1.      Rule 23(b)(2)*

Plaintiffs seek class certification pursuant to Rule 23(b)(2).  Plaintiffs primarily seek monetary relief.  Indeed, it is impossible to tell from the complaint what activities --- other than illegal ones --- the Plaintiffs seek to have me enjoin.  It is well settled that a class should not be certified under Rule 23(b)(2) where "the appropriate relief relates exclusively or predominantly to monetary damages."   *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1155 (11th Cir. 1983).  *See Clopton v. Budget*

*Rent A Car Corp.*, 197 F.R.D. 502, 507 (N.D. Ala. 2000) (denying Rule 23(b)(2)

certification because breach of contract, unjust enrichment, fraud, and RICO claims

predominantly seek money damages.)

### 2.      *Rule 23(b)(3)*

Rule 23(b)(3) requires a plaintiff to show that

> common questions of law or fact predominate over any questions
> affecting only individual members, and that a class action is superior .
> . . for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3); *see also Amchem*, 521 U.S. at 615.      Rule 23(b)(3)'s

requirements are aimed at situations where certifying a class would be more efficient

than maintaining individual actions, and at the same time provide "uniformity of

decisions as to persons similarly situated, without sacrificing procedural fairness or

bringing about undesirable results." *Amchem*, 521 U.S. at 615 (quoting Fed. R. Civ.

P. 23(b)(3) advisory committee's notes).  In determining whether a class action meets

the predominance and superiority criteria, the Court considers

> (A) the interest of members of the class in individually controlling the
> prosecution or defense of separate actions; (B) the extent and nature of any
> litigation concerning the controversy already commenced by or against
> members of the class; (C) the desirability or undesirability of concentrating the
> litigation of the claims in the particular forum; (D) the difficulties likely to be
> encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3).[11]  Addressing Rule 23(b)(3), the Supreme Court noted that at times the importance of each individual's class member's own particular interest will preclude class certification.  *Amchem*, 521 U.S. at 616 (citing Fed. R. Civ. P. 23(b)(3) advisory committee's notes).  In contrast, a class may be certified where manageable, when class claims are highly cohesive and "the amounts at stake for individuals" is "so small that separate suits would be impracticable."  *Id.*

       a.    *Predominance*

       *1. Legal Standard.*

With respect to predominance, the rule provides that class certification is proper pursuant to Rule 23(b)(3) only where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members."  As the Advisory Committee noted, "[i]t is only where this predominance exists that economies can be achieved by means of the class-action device." *Rule 23(b)(3)*, Advisory Notes to 1966 Amendment. Although superficially similar, the Rule 23(b)(3) predominance requirement is "far more demanding" than the Rule 23(a) commonality requirement. *Cooper,* 390 F.3d at 722; *see also Jackson v. Motel 6 Multipurpose, Inc.,* 130 F.3d 999, 1005 (11th Cir.1997) ("The predominance inquiry

---

[11]  While each of Rule 23(b)(3)'s criteria provide the Court with guidance in making a certification decision, the list of factors to consider is not exhaustive.  521 U.S. at 615.

... is far more demanding than Rule 23(a)'s commonality requirement."); *Noble,* 224 F.R.D. at 339 (similar); *O'Connor v. Boeing North American, Inc.,* 184 F.R.D. 311, 339 (C.D.Cal.1998) ("For the proponent to satisfy the predominance inquiry, it is not enough to establish that common questions of law or fact merely exist, as it is under Rule 23(a)(2)'s commonality requirement."). The predominance requirement is manifestly not satisfied if, as a practical matter, resolution of common issues will "break [ ] down into an unmanageable variety of individual legal and factual issues." *Cooper,* 390 F.3d at 722 (quoting *Andrews v. American Tel. & Tel. Co.,* 95 F.3d 1014, 1023 (11th Cir.1996)). Thus, the Eleventh Circuit has declared that Rule 23(b)(3) cannot be satisfied when it appears that most of Plaintiffs' claims will stand or fall depending on individual-specific factual issues. *See Cooper,* 390 F.3d at 722.

At the heart of the predominance inquiry is an examination of each claim by the named plaintiff and its similarity to the claims of the proposed class. *See Rutstein v. Avis Rent-A-Car Systems, Inc.*, 211 F. 3d 1228, 12359 (11th Cir. 2000) ("Whether an issue predominates can only be determined after considering what value the resolution of the class-wide issue will have in each member's underlying cause of action.")  If a determination of liability turns "upon highly individualized facts", then common issues of law or fact do not predominate.  *See id*. at 1235-1236 (*quoting McCarthy v. Kleindienst*, 741 F.2d 1406, 1415 (D.C. Cir. 1984)).  However, "[i]t is

not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004) (citation omitted).

### i. Legal Issues

The legal issues implicated by Plaintiffs' antitrust claims are identical to the issues presented by each class member.  One uniform Federal law, the Sherman Act, sets the applicable standards.  Thus, predominance of legal issues is met.

### ii. Factual Issues

Factual issues must also predominate.  The facts necessary to establish a nationwide conspiracy will necessarily be common to all of the putative class members.  However, proof of a violation under the Sherman Act, standing alone, does not establish civil liability under Section 4 of the Clayton Act.  Under Section 4, "there must ... be proof of injury to business or property' before a Sherman Act violation becomes cognizable as a private civil remedy." *State of Alabama v. Blue Bird Body Co., Inc.*, 573 F.2d 309, 317 (11th Cir. 1978) "[A] conspiracy to establish maximum prices ... would clearly violate the Sherman Act [citations omitted], but would not be a cognizable action under Section 4 *on behalf of retail customers* because they most likely would not have suffered injury as a result of such acts." *Id.*,

fn 17 (emphasis added).

> [The Eleventh] ... Circuit has clearly set forth the elements which must be established in order to recover treble damages under the antitrust laws. In *Terrell v. Household Goods Carriers' Bureau*, 494 F.2d 16 (5th Cir. 1974), [the Eleventh Circuit] ... explained that a prerequisite to recovery was a showing by the plaintiff of a violation of the antitrust laws, the fact of damage, and some indication of the amount of damage. *Terrell* established that "liability" for s 4 purposes means a showing of both an antitrust violation and fact of damage. The term "fact of damage" can be likened to the causation element in a negligence cause of action. The term means simply that the antitrust violation caused injury to the antitrust plaintiff. To make this showing, however, an antitrust plaintiff need not prove that the violation was the sole cause of any alleged injury, but he does need to show that the violation was a material cause. *Zenith Radio Corp. v. Hazeltine Research*, 395 U.S. 100, 114 n.9, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969).

*Id*. (internal citations omitted).  In the face of Plaintiffs' evidence and their expert's analysis, I find that, at least at this stage, the Plaintiffs have carried their burden of establishing predominance.  This is not the "rare" case in which computation of individualized damages prevents class certification.  "[T]he Court's inquiry is limited to whether or not the proposed methods [for computing damages] are so insubstantial as to amount to no method at all . . ."  *Klay*, 382 F.3d at 1259 (citation omitted).  I disagree with the Defendants that Plaintiffs' proposed method is "no method at all."

b.    *Superiority*

Like the predominance requirement, superiority is grounded in the idea that the litigation be carried out as efficiently and as fairly as possible for all parties.  *See Amchem*, 521 U.S. at 615.  The superiority requirement directs the court's attention to "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs."  *Klay*, 382 F.3d at 1269. "It is only when [management] difficulties make a class action less fair and efficient than some other method, such as individual interventions or consolidation of individual lawsuits, that a class action is improper."  *Id.*, quoting *Carnegie v. Mut. Sav. Life Ins. Co.*, No. CV-99-S-3292-NE, 2002 U.S. Dist. LEXIS, 21396, at *76-77 (N.D. Ala. Nov. 1, 2002).

As recognized by *Klay*, "the predominance analysis ... has a tremendous impact on the superiority analysis ... for the simple reason that, the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims.  *Id*.  For the same reasons that the Court finds that Plaintiffs have established that common questions of law and fact predominate, the Court also finds that a class action would be superior.

## VIII.  Conclusion

Based upon the foregoing, the Plaintiffs' motion for class certification is hereby

**GRANTED**.

**DONE** this 3rd day of March, 2006.